UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELAILAH LORENZI,

        Plaintiff,

v.                                        Case No.  8:12-cv-00432-T-27AEP

MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Delailah Lorenzi seeks judicial review of the denial of her claim for a period

of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").

Because the Commissioner of Social Security's decision was based on substantial evidence and

employed proper legal standards, the Court recommends that the decision be affirmed.

**I.**

    **A.**    **Procedural Background**

      Plaintiff filed an application for a period of disability, DIB, and SSI on October 15,

2009, alleging a disability beginning on January 9, 2009.[1]  (Tr. 161, 164.)  The Commissioner

---

[1]Although the ALJ's decision (Tr. 21) and Defendant's Memorandum of Law (Dkt.
No. 18 at 1) both indicate that Plaintiff applied for DIB and SSI on September 30, 2009,
presumably because Plaintiff listed that date on the disability report (Tr. 193), the only date
that is clear from the record regarding when Plaintiff filed for disability benefits is when
Plaintiff filed her application for SSI, which specifically states the filing date as October 15,
2009 (Tr. 164).  Therefore, the Court uses this date as the date of filing.

denied Plaintiff's claims both initially and upon reconsideration. (Tr. 104-11, 113-18.) Plaintiff then requested an administrative hearing. (Tr. 119-20.) On May 24, 2011, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff appeared and testified, and an impartial vocational expert ("VE") also appeared telephonically for the hearing. (Tr. 38-72.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 18-37.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1-6.) Plaintiff then timely filed a Complaint with this Court. (Dkt. No. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

### B.   Factual Background and the ALJ's Decision

Plaintiff, who was born on May 30, 1983, claims disability beginning on January 9, 2009. (Tr. 40, 161, 164.) Plaintiff has a high school education and completed some college. (Tr. 42, 190, 201.) Her past relevant work experience includes work as a cashier and pharmacy technician. (Tr. 184, 246.) Plaintiff alleges disability due to fibromyalgia, arthritis, psoriasis, a hearing impairment, hyperthyroidism, and depression. (Tr. 196.)

After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, psoriasis, obesity, and a hearing impairment. (Tr. 23, Finding 3.) The ALJ noted that Plaintiff also had a medically determinable mental impairment of depression/adjustment disorder and a medically determinable impairment of hypothyroidism and headaches but determined that these were not severe impairments. (Tr. 26-27.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27, Finding 4.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work. (Tr. 27, Finding 5.) Specifically and as part of Plaintiff's RFC, the ALJ found that Plaintiff: can stand and/or walk for six hours in an eight-hour workday; can sit for two hours in an eight-hour workday; is unable to climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally operate foot controls; must avoid exposure to hazards such as moving machinery and unprotected heights; and cannot perform a job requiring fine hearing capability but can perform a job that has a moderate noise level as defined in the Dictionary of Occupational Titles ("DOT"). (Tr. 27, Finding 5.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and functionally limiting effects of her symptoms were inconsistent with the evidence of record and could not be fully credited. (Tr. 27-30.)

Considering Plaintiff's noted impairments and the assessment of the VE, the ALJ determined that Plaintiff could not perform her past relevant work as a cashier checker and pharmacy technician. (Tr. 30, Finding 6.) The VE testified that Plaintiff's past jobs as a cashier checker and pharmacy technician were considered light work. (Tr. 65-66.) Because the ALJ found that Plaintiff nevertheless presented additional limitations, the ALJ relied on the VE's assessment to determine the extent to which these limitations eroded Plaintiff's ability to perform

unskilled sedentary occupations. (Tr. 31.) Given Plaintiff's age, education, work experience, and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a parimutuel ticket checker, document preparer, and jewelry preparer. (Tr. 31.) Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled within the meaning of the Social Security Act. (Tr. 31, Finding 11.)

## II.

In order to be entitled to SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of

the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner and not the courts to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656, 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Thus, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

## III.

Plaintiff challenges the ALJ's Decision on four grounds:

(1)    The ALJ erred in giving proper weight to and in analyzing the opinion of a

treating physician, Dr. Clay;

(2)    The ALJ erred by improperly analyzing Plaintiff's obesity as a severe

impairment;

(3)    The ALJ erred by mischaracterizing Plaintiff's testimony as to her job as a

babysitter; and

(4)    The ALJ erred by failing to pose a proper hypothetical to the VE.

For the reasons discussed below, none of the contentions warrant reversal.

**A.    Whether the ALJ properly analyzed and gave proper weight to Plaintiff's treating physician, Dr. Clay.**

On her first claim, Plaintiff argues that the ALJ failed to give greater weight to Plaintiff's

treating physician, Dr. Clay.  (Dkt. No. 17 at 3-7.)  Specifically, Plaintiff states that despite the

ALJ's findings, objective medical evidence was in the record to support Dr. Clay's opinion

regarding Plaintiff's fibromyalgia.  (Dkt. No. 17 at 3-4.)  Plaintiff contends that as the treating

rheumatologist in a fibromyalgia case, Dr. Clay's opinion should have been given greater weight,

and it was error for the ALJ to afford greater weight to a consultative examiner.  (Dkt. No. 17 at

4-7.)  Plaintiff also asserts that the ALJ erred in analyzing Dr. Clay's medical reports with regard

to the clinical finding of 18/18 trigger points, the notation of PIP and DIP swelling, and Plaintiff's

limitation on the use of her hands due to her fibromyalgia.  (Dkt. No. 17 at 1-4, 6-7.)  For the reasons discussed below, Plaintiff's arguments lack merit.

Generally, when determining whether a claimant is disabled, more weight should be afforded to the opinions of a treating source as opposed to a non-treating source, because:

> ... these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*See* 20 C.F.R. § 404.1527(d).  In determining the weight to be afforded to medical opinions such as opinions of a treating source, an ALJ shall consider the examining relationship, length of the treatment and frequency of the examination, nature and extent of the treatment relationship, supportability of a medical source, consistency of the opinions, specialization of the treating source, as well as certain "other factors."  *See id*.  Notwithstanding the Social Security Regulations, the ALJ is not required to explicitly address each of these enumerated factors. *Lawton v. Comm'r of Soc. Sec.*, 431 Fed. Appx. 830, 833 (11th Cir. 2011).  Rather, the ALJ must provide "good cause" for rejecting a treating physician's medical opinions. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004); *Lewis,* 125 F.3d at 1440.  In fact, the ALJ may reject any opinion

7

when it supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Further, this Circuit has held that a treating physician's opinion is not entitled to great weight if

evidence of a claimant's daily activities contradicts the opinion. *Jarrett v. Comm'r of Soc. Sec.*,

422 Fed. Appx. 869, 873 (11th Cir. 2011) (citing *Phillips*, 357 F.3d at 1241).

In arguing that greater weight should be given to a treating rheumatologist in a

fibromyalgia case because fibromyalgia cases are unique, Plaintiff cites to *Stewart v. Apfel*.[3]

Indeed, fibromyalgia cases are unique. *Morrison v. Barnhart*, 278 F. Supp. 2d 1331, 1335 (M.D.

Fla. 2003).  Specifically, this District has noted

> that fibromyalgia is unique and because of the unavailability of
> objective clinical tests, it is difficult to determine the severity of
> the condition and its impact on one's ability to work.  The Eleventh
> Circuit has observed:
> '[Fibromyalgia's] cause or causes are unknown, there is no cure,
> and, of greatest importance to disability law, its symptoms are
> entirely subjective.  There are no laboratory tests for the presence
> or severity of fibromyalgia.' *Sarchet v. Chater*, 78 F.3d 305, 306
> (7th Cir. 1996).  Thus, a treating physician's determination that
> a patient is disabled due to fibromyalgia is even more valuable
> because there are no objective signs of severity and the physician
> must interpret data for the reader.
> *Stewart v. Apfel*, No. 99-6132, 2000 U.S. App. LEXIS 33214,
> at *8-9 (11th Cir. Dec. 20, 2000) (citation omitted).[4]
> . . .
>
> Rheumatologists may be better qualified to determine the effects
> of fibromyalgia because not all doctors are trained to recognize this
> disorder.  *See Stewart*, 2000 U.S. App. LEXIS 33214, at *8

--------

[3]No. 99-6132, 2000 U.S. App. LEXIS 33214 (11th Cir. Dec. 20, 2000).

[4]Plaintiff cites this case in her Memorandum of Law to support the proposition that the
ALJ erred by not affording Dr. Clay's opinion, as the only treating rheumatologist of record,
greater weight.  (*See* Dkt. No. 17 at 4).

> (citation omitted); *see also Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367 (N.D. Ga. 2001) (acknowledging that a specialist in rheumatology is better qualified to diagnose fibromyalgia and determine its effects on an individual); 20 C.F.R. § 404.1527(d)(5) (stating that specialists' opinions on medical issues related to their area of specialty are generally given more weight).

*Id.* at 1335-36.   In *Morrison v. Barnhart*, the Court remanded the case because the ALJ, in discrediting the treating rheumatologist's opinion, insufficiently explained that the treating rheumatologist's opinion was "not consistent with the evidence of record as a whole, including the doctor's own examination findings[.]" *Id.* at 1336.   The Court found that the ALJ's explanation for discrediting the treating physician's opinion was "too general to permit meaningful judicial review in this case."  *Id.*

On the other hand, even in fibromyalgia cases, the Eleventh Circuit has stated that an ALJ may discredit a treating physician's opinion if the ALJ's ruling is supported by specific findings, which are clearly articulated.  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).  The Court in *Moore v. Barnhart* explained that the ALJ's decision was not solely based on a lack of objective medical evidence, making *Stewart v. Apfel* inapplicable; the ALJ's decision was also based on inconsistencies with the claimant's daily activities and claims of infirmity.  *Id.*; *see also Peters v. Astrue*, 232 Fed. Appx. 866, 871-72 (11th Cir. 2007) (finding *Stewart* inapplicable because the facts were distinguishable as there was other medical evidence that contradicted the treating physician's diagnosis of fibromyalgia, the treating physician's own records were inconsistent, and the claimant's testimony was not credible because it conflicted with her daily activities).  In *Moore v. Barnhart*, the Court went on to state that even though a treating

physician's testimony can be particularly helpful in fibromyalgia cases because objective medical evidence is often lacking, the ALJ adequately articulated specific justification for discounting the treating physician's opinion.  405 F.3d at 1212.

In reaching his decision in this case, the ALJ properly considered all medical records and opinions from the doctors that treated and examined Plaintiff, and clearly articulated the same. (Tr. 23-30.)  The ALJ properly afforded little weight to Dr. Clay's opinion.  Although generally as a treating source and as the rheumatologist of record Dr. Clay's opinion should have arguably been given greater weight, the ALJ properly gave the opinion little weight because good cause existed to reject such an opinion. The ALJ showed that good cause existed to reject Dr. Clay's opinion because Dr. Clay's medical opinion was internally inconsistent, the medical evidence of record supported a contrary finding, and Plaintiff's daily activities were inconsistent with Dr. Clay's opinion.  (Tr. 24-26, 28-30.)  The Court initially notes that *Morrison* is distinguishable from this case.  The ALJ in this case gave explicit reasons and cited to specific evidence when affording Dr. Clay's opinion little weight.  (*See* Tr. 28-30).  Thus, the holding in *Morrison* is inapplicable here.  Although Plaintiff relies on *Stewart* as previously discussed, the Court finds that case is likewise distinguishable from the instant case.  The ALJ's reason to afford little weight to Dr. Clay's opinion was not merely based on a lack of objective medical evidence as in *Stewart*, but was based on the three bases cited above.  Therefore, this case is similar to *Moore* where the ALJ was found not to have erred in discounting a treating rheumatologist's opinion in a fibromyalgia case when the ALJ articulated adequate grounds for doing so.

First, the ALJ demonstrated good cause for discounting Dr. Clay's opinion because Dr. Clay's treatment notes were internally inconsistent.  Plaintiff seems to rely heavily on the following treatment notes regarding Plaintiff's severe impairment of fibromyalgia within Dr. Clay's records: (1) that in January 2009, Dr. Clay checked the box on the orthopedic questionnaire "No" when answering the question of "[i]s the patient capable of performing fine/gross manipulations on a sustained basis?" and subsequently wrote the reason for this inability as "hand deformities" (Tr. 293); (2) that in May 2009, Dr. Clay noted that Plaintiff had 18/18 trigger points in spasm due to fibromyalgia (Tr. 304, 382); and (3) that Dr. Clay's May 2011 report indicated PIP and DIP swelling (Tr. 365-66).[5]

However, the ALJ specifically discussed the January 2009 questionnaire in his findings (Tr. 24)[6] and properly found that this opinion was not entitled to significant weight because it was rendered when Dr. Clay first starting treating Plaintiff and subsequent opinions were inconsistent

---

[5]Plaintiff attempts to argue that the ALJ misunderstood these particular treatment notes and in turn, when the ALJ stated there was no evidence of joint pain or inability of Plaintiff to use her hands, the ALJ erred because these three treatment notes constitute objective medical evidence of fibromyalgia.  (Dkt. No. 17 at 1-7.)  But the ALJ did not state that there was *no* evidence of joint pain or inability of Plaintiff to use her hands, rather, as will be more fully discussed, the ALJ stated that Dr. Clay's treatment notes were internally inconsistent with regard to joint pain and extremity use.  (Tr. 28-30.)  As such, the ALJ properly discounted Dr. Clay's opinion, and Plaintiff's argument is without merit.

[6]In his opinion, the ALJ stated that Dr. Clay's questionnaire indicated that Plaintiff "had decreased grip strength, decreased ability to perform fine manipulation, decreased ability to perform gross manipulation, chronic pain, joint deformity, and contractures", that Plaintiff's "grip strength would be reduced to 2/5 and her lower extremity strength would be reduced to 2/5", and that "due to hand deformities, she would be unable to perform fine and gross manipulations on a sustained basis."  (Tr. 24.)

11

with the findings, such as Dr. Clay's May 2011 report (Tr. 28-29).[7]  Further, the ALJ discussed

the treatment notes containing the record of 18/18 trigger points (Tr. 24), and while the ALJ

acknowledged that Dr. Clay's notes are mostly illegible (records from May 2009 through May

2011), the ALJ found that one, fully legible treatment note (in May 2011) indicated that Plaintiff

had a normal range of motion in her extremities, no small joint pain or swelling, and no trigger

fingers or toes (Tr. 365).  Notably, and as the ALJ discussed, although the May 2011 report stated

that there was PIP and DIP swelling, the same report (the legible note referenced, *supra*) was

inconsistent and noted that: a review of symptoms showed no joint pain, back pain, or muscle

problems; a physical examination revealed a normal gait with no assistive device despite finding

tenderness and pain over the sacroiliac joints; and a review of Plaintiff's extremities showed a

normal range of motion, no knee swelling, no notable varicosities, no cyanosis, normal pulses, no

small joint pain or swelling, and no trigger fingers or toes.  (Tr. 365.)  Additionally and as the ALJ

pointed out, in the May 2011 report, Dr. Clay reported that Plaintiff had severe pain in her joints

and muscles, yet Dr. Clay did not report any objective findings in his physical examination.  (Tr.

29.)  Significantly, the ALJ discussed another inconsistency with Dr. Clay's May 2011 record:

---

[7]Particularly of note, "[t]he ALJ's RFC need not be identical to a particular assessment of record or incorporate the precise limitations set forth by a physician." *See* 20 C.F.R. § 404.1545(a)(3) (stating that the ALJ must base the RFC on *all* of the relevant medical and other evidence) (emphasis added).  Here, the ALJ was under no legal obligation to adopt Dr. Clay's conclusions verbatim or at all.  Rather, he was required to evaluate this opinion with the rest of the evidence of record, which he did.  (Tr. 23-30.)  Therefore, Plaintiff's argument that "[t]he ALJ does not recognize the impairment of a lack of bilateral manual dexterity" (Dkt. No. 17 at 6) is unavailing because the ALJ specifically discussed the January 2009 questionnaire and discounted it based on Dr. Clay's subsequent, inconsistent records, other subsequent, inconsistent medical records, and Plaintiff's testimony regarding her daily activities.

while Plaintiff complained of severe pain in her joints and muscles as Dr. Clay noted, Dr. Clay also noted that Plaintiff was returning from a "long hiatus" from treatment (which appears to be approximately one year in length).  (Tr. 29, 365.)  Therefore, substantial evidence supports the ALJ's decision to give Dr. Clay's opinion little weight, and to consequently afford greater weight to a non-examining source's opinion, which was consistent with the record as a whole.[8]

Additionally, Dr. Clay's opinion was inconsistent with the record as a whole, including other medical evidence and Plaintiff's testimony regarding her daily activities.  The ALJ was correct in giving greater weight to a non-examining physician's opinion, Dr. Knox, in determining Plaintiff's RFC because Dr. Knox's findings were more consistent with the entire record.  According to the Social Security Regulations, "[f]indings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources."  S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).  In addition, state agency medical physicians' opinions may be entitled to greater weight than the opinions of treating or examining sources.  *Id.* at *3.  The weight afforded to state agency medical physicians' opinions varies, depending on the extent to which the findings are "supported by clinical findings and [are] consistent with other evidence."  *Jarrett*, 422 Fed. Appx. at 873 (citing 20 C.F.R. § 404.1527(d)(3)-(4); *Crawford*, 363 F.3d at 1158, 1160).  "[W]here a non-examining physician's assessment does not contradict the examining physician's report, the ALJ does not err in relying on the non-examining physician's

---

[8] It is, after all, the duty of the ALJ to weigh all of the evidence and resolve any inconsistencies in the record.  *See* 20 C.F.R. 404.1527(c)(2).

13

report." *Jarrett*, 422 Fed. Appx. at 873 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991)).

In challenging the ALJ's decision to afford greater weight to Dr. Knox's findings, Plaintiff primarily argues the uniqueness of fibromyalgia cases and the importance of a rheumatologist's opinion in such cases. (Dkt. No. 17 at 3-7.) But, as previously discussed, the cases that Plaintiff cites for support of that proposition are inapplicable here, and consequently, Plaintiff's argument is unpersuasive.

Plaintiff also contends by citing *Walden v. Schweiker*[9] that the ALJ erred in discounting Dr. Clay's opinion and giving greater weight to Dr. Knox's opinion because the ALJ arbitrarily rejected Dr. Clay's uncontroverted medical opinion. (Dkt. No. 17 at 5.) To the contrary and as explained, *supra*, Dr. Clay's opinion was not uncontroverted, which the ALJ discussed; Dr. Clay's treatment notes were internally inconsistent for one.[10]

Further, the ALJ did not arbitrarily reject Dr. Clay's opinion, but rather, provided explicit references to other objectively verifiable medical evidence in the record to demonstrate why Dr. Clay's opinion should be given little weight. Specifically, Plaintiff was evaluated by Dr. Knox in January 2010. (Tr. 312-20.) As the ALJ noted, even though Plaintiff consistently complained of pain, stiffness, fatigue, swelling, burning in her neck and shoulders, and difficulties using her

---

[9]672 F.2d 835, 839 (11th Cir. 1982).

[10]In addition, the mere diagnosis of fibromyalgia does not warrant an automatic finding of disability in this case. *See Moore*, 405 F.3d at 1213 n.6 (stating that a diagnosis of a condition, by itself, does not undermine the ALJ's decision because it does not reveal the effect on a claimant's ability to work) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

hands due to fibromyalgia, Dr. Knox observed that Plaintiff had no joint swelling, erythema, effusion, tenderness, or deformity, and Plaintiff was able to lift, carry, and handle light objects, and perform fine motor skills, such as opening doors, buttoning shirts, and manipulating a coin. (Tr. 28, 315-20.) Dr. Knox also noted that Plaintiff had a symmetric, steady gait, had no palpable muscle spasms and her muscle strength was recorded as 5/5 in all areas including grip strength, had no clubbing, cyanosis, or edema in her extremities, her nerves and reflexes were normal, and her range of motion was normal in all areas. (Tr. 315-20.) Importantly, no other medical records indicating reduced grip strength, loss of joint motion, or hand deformities appear in the record to substantiate Dr. Clay's treatment notes.[11] And Dr. Clay's May 2011 notes even include a normal range of motion in Plaintiff's extremities, no small joint pain or swelling, and no trigger fingers or toes. (Tr. 365.) Hence, Dr. Knox's opinion was properly afforded stronger weight as supported by substantial evidence, and Plaintiff's arguments lack merit.

Moreover, Plaintiff's own testimony regarding her activities is consistent with Dr. Knox's findings, as well; namely, that Plaintiff was not as limited as she alleged, particularly with respect to fibromyalgia. As the ALJ discussed, while Plaintiff gets some assistance in her daily activities, Plaintiff testified to driving, shopping, caring for her young children[12], and caring for the teenage children she babysat. (Tr. 28-29.) What's more, Plaintiff did not report any difficulty in using her hands as part of her disability application, a mere two weeks prior to Dr. Clay's initial report

---

[11]In fact, the ALJ discussed internal medicine treatment notes from April 2010, which noted that Plaintiff's extremities were normal. (Tr. 24, 341-43.)

[12]Plaintiff wrote in a November 2009 function report that she does "everything" for her children. (Tr. 212.)

indicating hand deformities.  (Tr. 197.)  Also, the ALJ did not limit his findings solely to Dr. Knox's report; the ALJ found that Plaintiff was limited to sedentary work and specifically mentioned limitations in that finding due to possible pain from fibromyalgia.[13]  (Tr. 30.)  The ALJ incorporated these limitations into his RFC finding, took into account all evidence of record, including the evidence from non-examining source Dr. Knox, and properly reached his decision based on substantial evidence.  Therefore, Plaintiff's first argument is without merit.[14]

> **B.     Whether the ALJ properly analyzed Plaintiff's obesity as a severe impairment.**

Plaintiff's second contention is that the ALJ erred in not properly analyzing Plaintiff's obesity as a severe impairment.  (Dkt. No. 17 at 8-9.)  Plaintiff avers that the ALJ's decision includes no analysis on the effect of Plaintiff's obesity in conjunction with Plaintiff's fibromyalgia.  (*Id.*)  Plaintiff urges that her obesity, which would have more than a minimal effect on her ability to work, combined with the difficulty in using her hands because of her fibromyagia, should result in this case being remanded.  (*Id.* at 9.)  For the reasons discussed below, Plaintiff's assertion is unconvincing.

At step two of the sequential analysis, a claimant must show that she suffers from an impairment or combination of impairments that significantly limits her physical and mental ability

---

[13]For example, the ALJ found that Plaintiff was limited in her ability to climb in some instances "due to the possible loss in upper extremity strength . . ." which demonstrates that the ALJ took possible limitations derived from Plaintiff's fibromyalgia into account in forming Plaintiff's RFC.  (*See* Tr. 30.)

[14]Plaintiff tangentially argues that if Dr. Clay's opinion was improperly afforded little weight, "it must be taken as true as a matter of law per *MacGregor v. Bowen*, 786 F.2d 1050, 1058 (11th Cir. 1986)."  (Dkt. No. 17 at 6.)  However, since the Court finds that Dr. Clay's opinion was properly afforded little weight, the Court deems this argument moot.

to do basic work activities for a consecutive twelve-month period, namely: walking; standing; sitting; pushing; reaching; seeing; hearing; speaking; understanding and carrying out of simple instructions; use of judgment; and responding appropriately in the workplace.  *See* 20 C.F.R. §§ 404.1520, 404.1521, 416.920, 416.921.  The finding of *any* severe impairment, whether or not it results from a single severe impairment or a combination or impairments that together qualify as severe, is enough to satisfy the requirements of step two.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987); *Lawson v. Astrue*, No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794, at *6 (M.D. Fla. Nov. 2, 2009); *see also Heatly v. Comm'r of Soc. Sec.,* 382 Fed. Appx. 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").  A claimant's impairment will be considered non-severe only if it is a slight abnormality that has such a minimal effect on the claimant that it would not be expected to interfere with the claimant's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  The severity of a medically ascertained disability must be measured, therefore, "in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter*, 791 F.2d at 1547.

First, the ALJ performed everything required of him in step two of his analysis.  In his decision, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia, psoriasis, obesity, and a hearing impairment.  (Tr. 23, Finding 3.)  The finding of *any* severe impairment is enough to meet the demands of step two.  *Jamison,* 814 F.2d at 588; *Heatly*, 382 Fed. Appx. at 824-25.  Since the ALJ found that Plaintiff suffered from these severe impairments,

he continued on in the sequential analysis and subsequently considered the purported limitations caused by Plaintiff's fibromyalgia and obesity, among others, in determining Plaintiff's RFC.

Next, the ALJ limited Plaintiff to sedentary work.  (Tr. 27.)  Notably, the ALJ explicitly referred to Plaintiff's fibromyalgia and obesity when summarizing Plaintiff's RFC.  (Tr. 30.)  For example, the ALJ stated that: "[d]ue to the loss of lower extremity strength [due to fibromyalgia], the claimant was further limited to occasional operation of foot controls.  Due to dizziness and obesity, the claimant was limited to avoiding exposures to hazards such as moving machinery and unprotected heights."  (*Id.*)  Therefore, the ALJ took these severe impairments into account when determining Plaintiff's RFC.

In addition, a condition or severe impairment is only relevant with regard to its effect on a claimant's ability to work.  *Moore*, 405 F.3d at 1213 n.6 (stating that a diagnosis of a condition, by itself, does not undermine the ALJ's decision because it does not reveal the effect on a claimant's ability to work) (citing *McCruter*, 791 F.2d at 1547).  It is Plaintiff's burden to prove that her impairments caused additional limitations on her ability to work.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a) & (c).  In support of her allegations, Plaintiff cites to Dr. Clay's treatment notes regarding her difficulty in using her hands as evidence that she was unable to work due to these conditions.  (Dkt. No. 17 at 9.)  However, Plaintiff fails to meet her burden and show how her fibromyalgia and obesity limited her ability to work more restrictively than what the ALJ found.  As previously discussed, Dr. Clay's treatment notes with regard to Plaintiff's hand and extremity use were internally inconsistent[15], not supported by other objective medical

---

[15]For example, under the physical examination section of Dr. Clay's May 2011 report regarding Plaintiff's extremities, Dr. Clay reported that Plaintiff's range of motion was

evidence[16], and even contrary to Plaintiff's testimony regarding her daily activities[17].  Because the

record evidence suggests that Plaintiff's fibromyalgia and obesity were not as severe as she alleged

and the ALJ considered these limitations in formulating Plaintiff's RFC, his decision is supported

by substantial evidence.  Consequently, Plaintiff's second argument must fail.

> **C.** **Whether the ALJ properly considered Plaintiff's subjective complaints of pain and other symptoms, especially with regard to Plaintiff's job as a babysitter.**

Plaintiff next contends that the ALJ erred by mischaracterizing Plaintiff's daily activities,

namely her past, part-time work as a babysitter.  (Dkt. No. 17 at 9-11.)  Specifically, Plaintiff

asserts that the ALJ incorrectly found that Plaintiff was taking care of small children – not

teenagers as Plaintiff stated at the hearing – in her babysitting job, indicating that Plaintiff was

constantly using her arms and hands and was capable of performing work consistently during an

eight-hour work day.  (Dkt. No. 17 at 9-10.)  Plaintiff also claims that the ALJ misconstrued

---

normal, there was no small joint pain or swelling or cyanosis, Plaintiff's nails were normal albeit her nail beds had redness, and there were no trigger points for muscle spasms in Plaintiff's fingers or toes.  (Tr. 365.)

[16]For example, Dr. Knox reported that Plaintiff had no clubbing, cyanosis, or edema in her extremities, no palpable muscle spasms, her muscle strength including grip strength was normal, and her range of motion was normal in every area.  (Tr. 315-20.)  Dr. Bunker, another treating physician and internal medicine doctor, also upon physical examination of Plaintiff noted that Plaintiff's extremities were normal, once in December 2009 and another time in April 2010.  (Tr. 341-43.)

[17]For example, Plaintiff listed on a function report in November 2009 that she does "everything" for her two, young daughters.  (Tr. 212.)  One consultative examiner noted, in February 2010, that Plaintiff was "able to prepare meals, shop, do HH [household] chores, manage finances, and drive."  (Tr. 340.)  And another consultative examiner noted that Plaintiff's "[a]verage day consists of watching television, caring for her daughters [one has a hearing impairment and the other has epilepsy], housecleaning, cooking, attending appointments, and grocery shopping."  (Tr. 310.)

19

Plaintiff's confusion about the number of hours she worked at this job as Plaintiff's lack of candor at the hearing, and subsequently and incorrectly found that Plaintiff could work for eight hours each day, five times per week.  (Dkt. No. 17 at 10.)  For the foregoing reasons, Plaintiff's claims are all unpersuasive.

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints.  As the Court of Appeals explained in *Landry v. Heckler*, the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  782 F.2d 1551, 1553 (11th Cir. 1986); *see also* 20 C.F.R. § 404.1529(a) (statements about pain or other symptoms will not alone establish disability).  This standard also applies to complaints of subjective conditions other than pain.  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).   If the ALJ discounts Plaintiff's testimony concerning subjective complaints after finding a medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms, he must "articulate explicit and adequate reasons" for doing so.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).[18]   The reasons given for discrediting pain testimony must be based on substantial evidence.  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992); *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

---

[18]This is the second step in a two-step process in considering a claimant's symptoms. *See* 20 C.F.R. § 404.1529(c) (evaluating the intensity and persistence of symptoms in light of all evidence to determine the capacity to work).

In the instant case, the ALJ properly applied the pain standard and found, after considering the evidence of record, that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms."[19]  (Tr. 28.)  However, the ALJ also determined that Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms were not credible because they were inconsistent with the RFC and were not supported by objective medical evidence.  (Tr. 28-30.)  As required by the Eleventh Circuit, the ALJ articulated "explicit and adequate reasons" for rejecting Plaintiff's pain allegations.  (*Id.*)

In fact, the ALJ highlighted several reasons for determining that Plaintiff's statements were not entirely credible, all of which were supported by the record.  (Tr. 28-29.)  For example, the ALJ noted that despite Plaintiff's complaints of pain, stiffness, fatigue, swelling, burning in her neck and shoulders, and difficulties with the use of her hands caused by her fibromyalgia, subsequent treatment notes from Dr. Clay indicated no small joint pain or swelling, no trigger points on her fingers or toes to indicate muscle spasms, a normal range of motion, and no side effects from the medications were reported.  (Tr. 28.)  Similarly, Dr. Knox reported that Plaintiff had no joint swelling, erythema, effusion, tenderness, or deformity, and that Plaintiff could lift, carry, and handle light objects, as well as perform fine motor skills.  (*Id.*)  Further, the ALJ pointed to Dr. Clay's May 2011 treatment note, which stated that Plaintiff was returning from a long hiatus from treatment (one year long), indicating that Plaintiff's limitations were not as severe as she

---

[19]Although the ALJ did not specifically state that Plaintiff met the threshold of the pain standard, it can be gleaned from the analysis of the ALJ's decision that the ALJ evaluated the credibility of the statements based on consideration of the record as a whole in step two.  (Tr. 27-30.)  Specifically, the ALJ found that Plaintiff had met step one by finding medically determinable impairments of fibromyalgia, psoriasis, obesity, and a hearing impairment.  (Tr. 23, 28.)

alleged.[20]  (Tr. 29.)  The ALJ also discussed that Plaintiff testified to having no problem buttoning shirts or turning pages in a magazine, driving, and shopping.[21]  (Tr. 28.)  Thus, neither the medical records nor Plaintiff's activities support Plaintiff's contentions about her pain and limitations and finding that Plaintiff's claims were not entirely credible was well within the realm of judging by the ALJ.  *See Faber v. Astrue*, No. 5:08-cv-260-Oc-GRJ, 2009 WL 3158182, at *10 (M.D. Fla. Sept. 25, 2009) (affirming the ALJ's credibility finding because Plaintiff's allegations were inconsistent with her self-reported activities of daily living and the objective medical evidence of record).[22]

Plaintiff takes issue with one of the other reasons the ALJ provided for finding Plaintiff's allegations of pain and symptoms not credible:  Plaintiff's prior, part-time work as a babysitter that was mostly performed during 2010.  Plaintiff first argues that the ALJ was incorrect in stating that Plaintiff was caring for small children in her babysitting job, when in fact, Plaintiff testified at the hearing that she was babysitting teenage children.  (Dkt. No. 17 at 9-10.)  Plaintiff explains that the ALJ improperly implied that Plaintiff was using her arms and hands extensively as would be

---

[20]The ALJ specifically stated that "it seems more likely that the claimant was attempting to build evidence in support of her case, as opposed to seeking actual relief from her symptoms."  (Tr. 29.)

[21]An ALJ may consider a claimant's daily activities in discrediting a claimant's subjective complaints of pain.  *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

[22]Importantly, the ALJ *did* consider some of Plaintiff's subjective complaints of pain credible.  The ALJ gave little weight to state agency physician Dr. Palmer and stated: "[c]onsidering the claimant's subjective complaints, it does not appear that she could perform medium work as he alleges plus he did not take into account the side effects of the claimant's medication."  (Tr. 29-30.)  The ALJ also included some limitations in Plaintiff's RFC that reflect some of Plaintiff's complaints of pain.  (Tr. 30.)

necessary with small children.  (*Id.*)  Plaintiff urges that this signifies that Plaintiff could perform work for eight hours per day as required by the Social Security Regulations in finding a lack of disability and signifies that Plaintiff's complaints about using her arms and hands were not entirely credible.  (*Id.*)

Plaintiff's account of what the ALJ stated is simply inaccurate.  In his decision, the ALJ stated that "the fact that she was able to work in a job that required her to care for children, which can be quite demanding both physically and emotionally, without any particular assistance suggests that the claimant is not as functionally limited as she claims." (Tr. 29.)  The ALJ makes no reference to *small* children, nor does he state that Plaintiff's work as a babysitter establishes that she can work full-time.  Instead, the ALJ discussed Plaintiff's ability to care for her own two children.  (Tr. 25, 28.)  Of particular note, Plaintiff reported on her function report in November 2009 that she does "everything" for her young daughters (one with a hearing impairment and the other with epilepsy).  (Tr. 212.)  It was also noted during a consultative examination in January 2010 that Plaintiff reported spending her average day caring for her daughters, among other things.  (Tr. 310.)  Therefore, the ALJ relied on substantial evidence in finding that Plaintiff was not as limited as she alleged.

Plaintiff also takes issue with the ALJ's interpretations of Plaintiff's testimony regarding the number of hours she worked during her babysitting job and why the job ended.  (Dkt. No. 17 at 9-10.)  Regarding this issue, the ALJ stated the following in finding Plaintiff not entirely credible:

Next, despite the claimant's allegations of being totally disabled,

23

she stated that she worked part time as a baby sitter, 3-5 hours per day, 5 days per week, for over one year.  While she initially claimed at the hearing that she could not do it after December due to pain, she later stated that her client went through a divorce so he no longer needed her services.  Then, when asked if she worked 15 to 20 hours per week, she claimed she did not remember even though she just stated that she worked 3 to 5 hours per day 5 days per week. This left the impression that the claimant may have been less than entirely candid.

(Tr. 29.) First, Plaintiff contends that the ALJ took Plaintiff's statement at the hearing about why the babysitting job concluded out of context, and the ALJ should have relied on the statement that the job ended due to Plaintiff's pain and the side effects of her medication.  (Dkt. No. 17 at 10.) In arguing that Plaintiff could not work eight hours per day, Plaintiff avers that the ALJ's interpretation of that statement gave a false impression that Plaintiff could work eight hours per day.[23]  (*Id.*)  Moreover, in testifying about the number of hours Plaintiff worked as a babysitter, Plaintiff asserts that she was merely confused when the ALJ asked her the follow-up question, and as a result, Plaintiff was being entirely candid with the ALJ.  (*Id.*)  Contrary to Plaintiff's assertions, the ALJ merely summarized Plaintiff's statements accurately and concluded that Plaintiff was not credible by giving conflicting testimony.  As the trier of fact, the ALJ properly performed his duty and decided Plaintiff was not entirely credible.  *Perales*, 402 U.S. at 399;

---

[23]See S.S.R. 96-8P, 1996 WL 374184, at *1 (July 2, 1996), which provides that "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Further, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  *Id.*  Therefore, in denying disability benefits, the evidence must show that the claimant can perform work on a regular and continuing basis.

*Moore*, 405 F.3d at 1213.  And it is not the job of this Court to disturb those findings.  *Celebrezze*, 323 F.2d at 990.

Finally, the ALJ articulated several reasons for not finding Plaintiff's allegations of pain entirely credible, including specific citations to objective medical evidence that contradicted Plaintiff's statements.  Even assuming *arguendo* that the ALJ erred by incorrectly describing Plaintiff's part-time work as a babysitter, this error is harmless as other substantial evidence exists to support the ALJ's decision.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding that the ALJ's mischaracterization of the claimant's past work harmless error as the characterization of the vocational factors was irrelevant where the ALJ found no severe impairment).  While Plaintiff may argue that the record supports a contrary conclusion, it is "within the ALJ's discretion to determine, after listening to [Plaintiff's] testimony, that [her] claims of pain and other symptoms were not credible."  *Holt*, 921 F.2d at 1223; *see also Adefemi*, 386 F.3d at 1027 (stating "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings").  Thus, the ALJ properly articulated his reasons for questioning Plaintiff's credibility, and his finding is supported by substantial evidence.  Accordingly, Plaintiff's third argument is without merit.

**D.      Whether the ALJ properly posed a hypothetical to the VE.**

Lastly, Plaintiff argues that the ALJ erred by not posing a proper hypothetical to the VE. (Dkt. No. 17 at 7-8.)  Plaintiff complains that the ALJ did not include within the hypothetical any restriction on Plaintiff's use of her hands.  (Dkt. No. 17 at 7.)  Plaintiff claims that it is impossible for the ALJ to find fibromyalgia as a severe impairment, yet not discuss any effect to the usage of

25

Plaintiff's hands in a hypothetical posed to the VE, which formed the basis for the ALJ's decision. (Dkt. No. 17 at 7.)  The Court finds Plaintiff's argument unavailing.

At step five of the sequential analysis, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can make an adjustment to other work, a finding of not disabled is warranted.  *Id.*  Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted.  *Id.*  At this step, the burden temporarily shifts to the Commissioner to show that other jobs exist in the national economy, which given the claimant's impairments, the claimant can perform.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  Typically, where the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE.  *Id.* at 1229.  The testimony of the VE is crucial to the ALJ in reaching a determination at step five of the sequential evaluation process because the VE is an expert with respect to the kinds of jobs an individual can perform based on his or her capacity and impairments.  *See id.* at 1230; *see also Phillips*, 357 F.3d at 1240.

The ALJ must pose an accurate hypothetical that takes into account all of the claimant's impairments in order to be supported by substantial evidence.  *Jones v. Comm'r of Soc. Sec.*, 423 Fed. Appx. 936, 938 (11th Cir. 2011); *Jones*, 190 F.3d at 1228-29; *see Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985).   The ALJ's hypothetical posed to a VE must

comprehensively describe the claimant's limitations. *See Pendley*, 767 F.2d at 1562-63. Of course, the ALJ is not required to include limitations found not credible and submits to the expert only those limitations supported by objective evidence of record. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996); *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987).

Plaintiff argues that the hypothetical posed to the VE did not include all of Plaintiff's limitations, namely, Plaintiff's restrictive use of her hands due to her fibromyalgia. (Dkt. No. 17 at 7.) Plaintiff further argues that the ALJ erred in finding that Plaintiff could perform a range of sedentary work. (Dkt. No. 17 at 8.) Plaintiff highlights the portion from the hearing when the ALJ asked the VE what effect an occasional limitation on the use of both of her hands would have on Plaintiff's ability to perform sedentary work, and the VE replied that said limitation would eliminate all sedentary work. (*Id.*) Therefore, Plaintiff argues that the ALJ's finding that Plaintiff could perform sedentary work was in error because Plaintiff was limited in the use of her hands. (*Id.*)

As previously discussed, Plaintiff's claims that she could not use her hands and Dr. Clay's January 2009 questionnaire that indicated that Plaintiff had hand deformities, which made Plaintiff unable to perform fine and gross manipulations on a sustained basis, were properly discredited by the ALJ because they were not consistent with the record as a whole, and therefore, need not be included in the hypothetical posed to the VE. *Wolfe*, 86 F.3d at 1078; *McSwain*, 814 F.2d at 620 n.1. The ALJ considered and properly excluded Plaintiff's claims regarding her limited hand usage in determining the RFC and posing a hypothetical to the VE because Plaintiff's reported daily activities were inconsistent with this claim. (Tr. 25, 28.) Of note, while Plaintiff claims the

pain in her hands affected her ability to work, in her function report dated November 2009, she reported doing "everything" for her young, disabled daughters, which would require significant use of her hands. (Tr. 212.) Plaintiff also testified to, as some consultative examiners' reports confirm, that she does light chores around the house, she's able to shop, drive, and button her shirt, pick up something small such as change, and turn pages in a magazine.[24] (Tr. 57-59, 310, 340.) Further, Dr. Knox also noted in January 2010, as consistent with the entire record including Plaintiff's testimony, that Plaintiff had no clubbing, no cyanosis, no palpable muscle spasms, normal grip strength, no joint swelling, tenderness, or deformity, and Plaintiff was able to lift, carry, and handle light objects as well perform fine motor skills. (Tr. 315-20.) And even Dr. Clay's May 2011 physical examination notes indicated that Plaintiff's extremities showed a normal range of motion, she had no small joint pain or swelling, and no trigger fingers or toes. (Tr. 365.) So the ALJ properly considered Plaintiff's claims, but appropriately dismissed them when forming his RFC. (Tr. 27-30.) Because the ALJ properly discounted Plaintiff's non-credible statements regarding her symptoms and Dr. Clay's inconsistent medical opinion, the ALJ properly posed a hypothetical to the VE that included all of Plaintiff's proper limitations as evidenced by the cumulative record. (Tr. 27, 65-69.) Substantial evidence supports the ALJ's findings, his hypothetical posed to the VE, and Plaintiff's ability to perform sedentary work. Plaintiff failed to prove otherwise. Thus, Plaintiff's last point lacks merit and the ALJ did not err.

---

[24]While the Court acknowledges that Plaintiff stated at the hearing that she lifts her children up using her forearm and she doesn't "really carry them a lot" (Tr. 57), and she gets some assistance with household chores from "family members" (Tr. 58), the record is replete with other evidence indicating that Plaintiff's limitations were not as severe as she alleged. The ALJ clearly cited to this evidence and sufficiently articulated his reasons for doing so.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.

**IV.**

Accordingly, for the foregoing reasons, it is **RECOMMENDED** that:

(1)      The decision of the Commissioner be **AFFIRMED**; and

(2)      The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on this 13th day of February, 2013.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982)

29

*(en banc)*.

Copies furnished to:

Hon. James D. Whittemore
Counsel of Record